UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

CAROLINE CORT,

                Plaintiff,

-against-

MARSHALL'S DEPARTMENT STORE, et al.,

                Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**14-CV-7385 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Caroline Cort (either, "Cort" or "Plaintiff") brings this action against Defendant Marshalls Department Store, s/h/a Marshall's Department Store (either, "Marshalls" or "Defendant")[1] for assault, battery, negligent hiring and retention, negligent supervision and training, and intentional or negligent infliction of emotional distress. (Compl. (Dkt. 1).) Defendant now moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Not. of Mot. to Dismiss (Dkt. 13).) For the reasons discussed below, Defendant's motion to dismiss is GRANTED. However, Cort is granted leave to amend her Complaint.

I.      **BACKGROUND**

The following facts are taken from the Complaint and are assumed to be true for the purposes of this motion.[2]

---

[1] Originally, it appeared that the court did not have jurisdiction over this action because Plaintiff was not completely diverse from all Defendants. (See Feb. 27, 2015, Min. Entry.) Plaintiff subsequently notified the court that she intended only to pursue her claims against Marshalls, and not the store employees. (Mar. 27, 2015, Ltr. (Dkt. 11).) Accordingly, the court now appears to have jurisdiction pursuant to 28 U.S.C. § 1332, because Plaintiff and Marshalls are diverse.

[2] Defendant submitted a purported videotape of the incident in conjunction with its motion. However, on a motion to dismiss, the court cannot consider the videotape. See Robinson v. Gov't of Malay., 269 F.3d 133, 141 n.6 (2d Cir. 2001) (noting that on a motion to dismiss a court cannot consider evidence outside the pleadings).

1

On December 19, 2013, Plaintiff was shopping with her sister in a Marshalls store. (Compl. at 3.) While she was walking through the store, a Marshalls employee named Tiariyani Frazier ("Frazier") began following her and her sister around the store. (Id.) Sometime later, Frazier disappeared and returned wearing a different outfit. (Id.) Frazier continued to follow Plaintiff throughout the store. (Id.) Plaintiff approached two different store managers to complain about the Frazier's threatening behavior, but the managers did not take action. (Id.) Later, Frazier and two other women—neither of whom were associated with Marshalls—attacked Plaintiff and her sister while they waited in line to pay. (Id. at 4.) The altercation lasted for several minutes; security did not arrive. (Id.)

As a result of the incident, Plaintiff incurred medical bills for her injuries and experienced severe trauma, loss of income, pain and suffering, humiliation, and anxiety. (Id.)

Plaintiff asserts five causes of action, all brought under New York law, against Marshalls. (Id.) Count One asserts an assault claim, Count Two asserts a battery claim, Count Three asserts a claim of negligent hiring and retention, Count Four asserts a claim of negligent supervision, and Count Five asserts either, or both,[3] a claim of negligent and/or intentional infliction of emotional distress. (Id.)

## II. LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing a complaint, the court must accept as true all allegations of fact, and

---

Although, "a district court has discretion to convert a motion to dismiss into a motion for summary judgment," Garcha v. City of Beacon, 351 F. Supp. 2d 213, 216 (S.D.N.Y. 2005), the court declines to consider the tape.

[3] As explained below, Count Five could be read to assert two separate claims. The court assumes Plaintiff intended to plead both.

2

draw reasonable inferences from the allegations in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a 'probability requirement,'" but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis in original) (quoting Twombly, 550 U.S at 555).

## III. DISCUSSION

Both parties appear to agree that the Complaint would properly state a direct claim against Frazier, who is no longer a defendant in this action. The question therefore, is whether Plaintiff can impute Frazier's tortious acts to Frazier's employer, Marshalls. For the reasons outlined below, assuming as true the allegations in the Complaint, she cannot.

### A. Respondeat Superior

"Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment." Sclafani v. PC Richard & Son, 668 F. Supp. 2d 423, 447 (E.D.N.Y. 2009) (quoting N.X. v. Cabrini Med. Ctr., 765 N.E.2d 844, 846-47

3

(N.Y. 2002) (Wesley, J.)); see also Saretto v. Panos, 992 N.Y.S.2d 88, 90 (App. Div. 2014); Giambruno v. Crazy Donkey Bar & Grill, 885 N.Y.S.2d 724, 728 (App. Div. 2009). "The theory is that the employer should, as a required cost of doing business . . . compensate a party harmed by an employee who was acting not on his or her own behalf, but in the employer's service." Rausman v. Baugh, 682 N.Y.S.2d 42, 43 (App. Div. 1998) (citing Adams v. N.Y.C. Transit Auth., 666 N.E.2d 216, 218 (N.Y. 1996)). Therefore, in order to state a respondeat superior claim, a plaintiff must plead facts that plausibly allege that the predicate torts were committed "within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests." Doe v. Alsaud, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014); see also Tchatat v. City of New York, No. 14-CV-2385 (LGS), 2015 WL 5091197, at *17 (S.D.N.Y. Aug. 28, 2015) ("Respondeat superior applies to a tort committed by an employee in the course of the performance of his or her duties, even if such duties are carried out in an irregular fashion or with disregard of instructions.") (internal citation and quotation marks omitted), recons. granted in part by, 2015 WL 6159320 (S.D.N.Y. Oct. 20, 2015); Rausman, 682 N.Y.S.2d at 43.

The same principle applies equally to intentional torts, including assault and battery; for respondeat superior to apply, the employee must have committed the intentional tort while acting within the scope of employment. See Sclafani, 668 F. Supp. 2d at 447 ("For an intentional tort to be considered within the scope of employment, however, it must in some broad sense further the employer's business."); see also Dykes v. McRoberts Protective Agency, Inc., 680 N.Y.S.2d 513, 514 (App. Div. 1998); Quadrozzi v. Norcem, Inc., 509 N.Y.S.2d 835, 836-37 (App. Div. 1986).

"There is no single mechanical test to determine whether at a particular moment an employee is engaged in the employer's business." Rausman, 682 N.Y.S.2d at 43-44. Nonetheless, New York courts have identified a number of useful factors to consider, including:

> connection between the time, place and occasion for the act; the history of the relationship between the employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

Id. (citing Riviello v. Waldron, 391 N.E.2d 1278 (1979)).

1. Respondeat Superior and Frazier

Plaintiff has failed adequately to allege that Frazier was acting within the scope of her employment when she attacked Plaintiff.

First, Plaintiff's allegations concerning Frazier's scope of employment are inadequate. Plaintiff's only allegation that arguably relates to whether Frazier was acting in the course of her employment when the attack occurred is that Frazier was employed by Marshalls as a sales person. (Compl. ¶ 4.)[4] This is not enough. In order plausibly to allege liability under a respondeat superior theory, a plaintiff must plead facts that indicate that the alleged predicate tort was undertaken during the course of employment. See, e.g., Tchatat, 2015 WL 5091197, at *17 (finding that the plaintiff adequately pleaded a respondeat superior claim where the complaint included allegations that the predicate tort was committed in furtherance of an employer's loss prevention system). Plaintiff has not done so.

Second, the facts that Plaintiff does allege belie the assertion that the attack was undertaken within the scope of Frazier's employment. Plaintiff alleges that Frazier attacked her with the aid of two non-employees. (Compl. ¶ 11.) If the attack was undertaken in the course of

---

[4] The court notes that certain portions of the Complaint are pleaded with paragraph numbers while others are not. Where possible, the court has cited to the paragraph numbers.

5

Frazier's employment, it is highly unlikely that two non-employees would join. Indeed, Plaintiff alleges that Frazier herself took steps incongruent with acting within the course of employment, such as changing her clothes before the attack. (Id. at 3.)

Finally, an assault or battery is typically only considered within the scope of employment when the employee who committed the tortious act was authorized to use force by his or her job duties. Compare Fauntleroy v. EMM Grp. Holdings LLC, 20 N.Y.S.3d 22, 22 (App. Div. 2015) ("When businesses hire security guards or bouncers to maintain order, the physical force used by those bouncers may be within the scope of their employment."); Crazy Donkey, 885 N.Y.S.2d at 728 (holding that a bouncer's use of excessive physical force could reasonably be within the scope of employment), with Carnegie v. J.P. Phillips, Inc., 815 N.Y.S.3d 599, 599-601 (App. Div. 2006) (holding that an assault by a construction subcontractor was not within the scope of employment); Oneta v. Paul Tocci Co., 67 N.Y.S.2d 795, 798 (App. Div. 1947) (holding that a waste collector was not acting within the scope of his employment when he committed an assault).

Taken as a whole, the Complaint, therefore, fails adequately to plead that Frazier was acting within the scope of her employment when she attacked Plaintiff. "[W]here a court takes as true all the facts alleged by plaintiff and concludes that the conduct complained of cannot be considered as a matter of law within the scope of employment, then the court must dismiss the complaint for failure to state a claim." Haybeck v. Prodigy Servs. Co., 944 F. Supp. 326, 329 (S.D.N.Y. 1996) (Sotomayor, J.). Thus, to the extent Plaintiff asserts Count 1 (assault) or Count 2 (battery) on the theory that Frazier was acting within the scope of her employment, those claims are DISMISSED WITHOUT PREJUDICE.

## 2. Respondeat Superior and Store Management and Security

That Plaintiff has not properly alleged that Frazier's intentional tort is attributable to Marshalls does not end the inquiry.

Retail stores have a reasonable duty of care to protect their customers. See Jones v. Great Am. Grocery Store, 651 N.Y.S.2d 773, 774 (App. Div. 1996); Davis v. City of New York, 584 N.Y.S.2d 64, 64 (App. Div. 1992). Where a defendant's employees actually observe misconduct and fail to take action, the employer may be held liable. See Cabrini Med. Ctr., 765 N.E.2d at 848; see also Doe v. Guthrie Clinic, Ltd., 519 F. App'x 719, 721 (2d Cir. 2013) (summary order) (recognizing that Cabrini allowed for a negligence claim where an employee knew of, but failed to respond to, a tort).[5] Accordingly, even where the direct tortfeasor was not acting within the scope of her employment when she commits the predicate tort, an employer may nonetheless be liable under a theory of respondeat superior if other employees, acting within the scope of their employment, negligently respond to the direct tortfeasor. See Nevaeh T. v. City of New York, 18 N.Y.S.3d 415, 419 (App. Div. 2015).

Here, Plaintiff alleges that she notified Defendant's store managers that "she was being followed and harassed by a store sales clerk," and that the store managers did nothing to address the situation. (Compl. ¶ 25.) Further, Plaintiff alleges that although her altercation with Frazier lasted "five to fifteen minutes," security did not respond. (Id. at 4.) Accordingly, Plaintiff has properly pleaded that the store managers and the security guards were themselves negligent.

What Plaintiff does not allege is whether the store managers or security guards were acting within the scope of their employment duties when they committed any allegedly negligent acts. Absent such allegations, the Complaint cannot plausibly state a claim under a respondeat

---

[5] Cabrini has been applied outside of the hospital context. See Steinberg v. N.Y.C. Transit Auth., 958 N.Y.S.2d 63 (Sup. Ct. 2010) (table) (collecting cases), aff'd, 931 N.Y.S.2d 291 (App. Div. 2011).

7

superior theory. Accordingly, Plaintiff's respondeat superior claims premised on store management's or security's negligence are DISMISSED WITHOUT PREJUDICE.

      **B.     Marshalls's Direct Negligence**

Owners of public establishments have a duty to protect their patrons from reasonably foreseeable harm. Hegarty v. Tracy, 4 N.Y.S.3d 254, 255 (App. Div. 2015). An owner's duty to control the conduct of those on its premises arises only "when it has opportunity to control such conduct, and is reasonably aware of the need for such control." Id. (quoting Kranenberg v. TKRS Pub, Inc., 952 N.Y.S.2d 215, 217 (App. Div. 2012)). Thus, an owner has no duty to protect patrons from unforeseeable assaults. Id. However, if the situation was one that could have been anticipated or prevented, a defendant may be held liable for attacks that occurred on its premises. See Great Am. Grocery Store, 651 N.Y.S.2d at 773; Banayan v. F.W. Woolworth Co., 622 N.Y.S.2d 24, 25 (App. Div. 1995) (finding that although a store has "no duty to protect its customers from the unforeseeable risk of harm from the criminal activities of third persons on the premises, there is nevertheless a duty to control the conduct of such persons when the establishment has the opportunity to control or is reasonably aware of the necessity for such control").

Foreseeability can be established "in terms of past experience that there is a likelihood of conduct on the part of third persons which is likely to endanger the safety of the visitor." Jacqueline S. ex rel. Ludovina S. v. City of New York, 614 N.E.2d 723, 726 (N.Y. 1993) (citations and internal quotation marks omitted). In the context of third-party assaults, courts often look to whether there are allegations of past criminal activity or similar incidents involving third parties, such that defendant would be on notice and able to anticipate an assault. De Luna-Cole v. Fink, 846 N.Y.S.2d 129, 130 (App. Div. 2007) (holding that an assault was

8

foreseeable due to the premise's location in high crime area, multiple crimes committed in the building, and past tenant complaints); Bryan v. Crobar, 885 N.Y.S.2d 122, 124 (App. Div. 2009) (holding that history of eight violent assaults at nightclub raised a triable issue of fact as to whether defendant could have reasonably foreseen the incident in suit); Davis v. City of New York, 584 N.Y.S.2d 64, 64 (App. Div. 1992).

Plaintiff has not alleged any facts suggesting that Defendant was or should have been aware of the likelihood that a customer would be assaulted in the store. Absent such allegations, Plaintiff's direct claim against Marshalls fails as a matter of law, see Crobar, 885 N.Y.S.2d at 124 (plaintiff must plead that an attack was foreseeable to state a claim), and thus is DISMISSED WITHOUT PREJUDICE.

### C. Negligent Hiring, Retention, Supervision, and Training

"[W]here an employer cannot be held vicariously liable for torts committed by its employee, the employer can still be held liable under theories of negligent hiring and negligent retention." Sheila C. v. Povich, 781 N.Y.S.2d 342, 350 (App. Div. 2004). Put another way, an employer is responsible for negligently placing an employee in a position to cause foreseeable harm, when the employer knows or should know of the employee's propensity for dangerous behavior. Haddock v. City of New York, 532 N.Y.S.2d 379, 380 (App. Div. 1988), aff'd, 553 N.E.2d 987 (1990); Detone v. Bullit Courier Serv., Inc., 528 N.Y.S.2d 575, 576 (App. Div. 1988). In order to state a claim for negligent hiring, retention, supervision, or training, a plaintiff must allege facts indicating that "the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence." Williams v. City of New York, 916 F. Supp. 2d 235, 245 (E.D.N.Y. 2012) (quoting Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004)).

A conclusory allegation is not enough to state a claim for negligent hiring, retention, supervision, or training. See Ahluwalia v. St. George's Univ., LLC, 63 F. Supp. 3d 251, 264 (E.D.N.Y. 2014) ("[W]hile the Plaintiff alleges that [the employees] had the propensity to engage in illegal conduct and that the underlying illegal conduct by these employees fell outside the course and scope of their employment, he fails to set forth any facts plausibly supporting this threadbare allegation.") (citations and internal quotation marks omitted)), aff'd sub nom. Ahluwalia v. St. George's Univ., --- F. App'x ---, No. 14-4780-cv, 2015 WL 5559865 (2d Cir. Sept. 22, 2015) (summary order); Cruz v. New York, 24 F. Supp. 3d 299, 311 (W.D.N.Y. 2014) ("Plaintiff alleges that the Supervisory Defendants knew or should have known that Defendants Waters and Clark were potentially dangerous. Plaintiff[']s allegation is conclusory and unsupported by any factual allegations supporting his assertion.") (internal citation and quotation marks omitted); Ross v. Mitsui Fudosan, Inc., 2 F. Supp. 2d 522, 532-33 (S.D.N.Y. 1998) ("Conclusory allegations of negligent supervision are insufficient to overcome a motion to dismiss.").

All Plaintiff alleges is that "Marshall's [sic] knew or should have known of its employee's propensity for the conduct that caused the injury." (Compl. ¶ 42.) This conclusory allegation, without more, does not sufficiently allege that Marshalls was or should have been on notice of Frazier's potential to commit an assault. See Ahluwalia, 63 F. Supp. 3d at 264; Doe v. Alsaud, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014). As a result, Count 3 (negligent hiring and retention) and Count 4 (negligent supervision and training) are DISMISSED WITHOUT PREJUDICE.

10

D. **Infliction of Emotional Distress**

Plaintiff appears to allege both intentional infliction of emotional distress (Compl. at 4) and negligent infliction of emotional distress (id. ¶ 46) arising out of Frazier's actions. Neither is adequately alleged.

1. Intentional Infliction of Emotional Distress

To state a claim of intentional infliction of emotional distress, a plaintiff must establish (1) extreme and outrageous conduct, (2) with the intent to cause emotional distress, (3) a causal connection between the conduct and the alleged injury, and (4) severe emotional distress. Rivera v. City of New York, 392 F. Supp. 2d 644, 657-58 (S.D.N.Y. 2005); Howell v. N.Y. Post Co., 612 N.E.2d 699, 702 (N.Y. 1993).

"The standard for stating a valid claim of intentional infliction of emotional distress is rigorous, and difficult to satisfy." Baez v. JetBlue Airways, 745 F. Supp. 2d 214, 223 (E.D.N.Y. 2010). Out of the four elements, the extreme and outrageous conduct element is the one most susceptible to determination as a matter of law. Taggart v. Costabile, 14 N.Y.S.3d 388, 394 (App. Div. 2015) (citing Howell, 612 N.E.2d at 702). Situations that rise to this standard include a two-year "campaign of lewd comments and intimidation" that ended with mock gravesites created to instill fear, Mitchell v. Giambruno, 826 N.Y.S.2d 788, 790 (App. Div. 2006), and a video camera installed in a workplace restroom to "surreptitiously view and record the plaintiffs while they used the restroom," Sawicka v. Catena, 912 N.Y.S.2d 666, 667 (Sup. Ct. 2010). Compared to these cases, the court concludes that the facts alleged here are not "beyond all bounds of decency, . . . atrocious, . . . and utterly intolerable." Shelia C., 781 N.Y.S.2d at 351. Taggert is instructive. There the court reasoned:

> [T]he plaintiffs alleged in the complaint that the defendants exhibited outrageous and extreme conduct in renting to tenants

11

> who posed a clear and present danger to the neighborhood, and refused to control the dangerous behaviors of those tenants. They alleged that the defendants refused to put a stop to their tenants' behavior despite the fact that they had actual notice that the tenants were responsible for hosting large gatherings, blocking the flow of traffic, blaring loud music at all hours of the night, drinking alcohol in the street, using illegal drugs in the street, and selling illegal drugs on the rented premises. The plaintiffs alleged that the defendants' failure to rein in their tenants ultimately led to the invasion of their property by the intruders.
>
> Although the individuals who broke into the plaintiffs' home may have engaged in extreme and outrageous conduct, the complaint alleges no basis upon which the intruders' conduct may be imputed to the defendants. The defendants' intentional conduct, as alleged in the complaint, amounts to nothing more than a failure to ensure that their tenants and their friends refrained from committing the acts described in the complaint.

Taggart, 14 N.Y.S.3d at 394. Likewise, here, although Frazier's conduct may have been extreme and outrageous, Plaintiff has failed to allege that Marshalls's conduct was extreme and outrageous. Indeed, Plaintiff has not pleaded anything more than that Marshalls failed to prevent the attack (at least absent a plausible respondeat superior allegation). Accordingly, Plaintiff's intentional infliction of emotional distress claim is DISMMISED WITHOUT PREJUDICE.

2.  Negligent Infliction of Emotional Distress

"It is well-settled that a person to whom a duty of care is owed may recover for harm sustained solely as a result of an initial, negligently-caused psychological trauma, but with ensuing psychic harm with residual physical manifestations."[6] Ornstein v. N.Y.C. Health & Hosps. Corp., 881 N.E.2d 1187, 1189 (N.Y. 2008) (alteration removed) (internal citations and quotation marks omitted). To state a claim for negligent infliction of emotional distress, the

---

[6] The court notes that in addition to the direct emotional injury theory, there are two other means of showing negligent infliction of emotional distress. "The other two lines of cases identified by the Court of Appeals . . . involve the 'zone-of-danger rule' and situations where a third party is physically injured through the violation of some duty which causes only financial or emotional harm to the plaintiff." Taggart, 14 N.Y.S.3d at 395-96 (internal citations omitted). Neither is relevant here.

plaintiff must demonstrate that her injury was "a 'direct, rather than a consequential, result of the negligence,' and that the claim of emotional distress possess 'some guarantee of genuineness.'" Taggart, 14 N.Y.S.3d at 396 (quoting Kennedy v McKesson Co., 448 N.E.2d 1332, 1335 (N.Y. 1983); Ferrara v. Galluchio, 152 N.E.2d 249, 252 (N.Y. 1992)); see also Abdel-Karim v. EgyptAir Airlines, No. 12-CV-5614 (JGK), 2015 WL 4597555, at *18 (S.D.N.Y. July 31, 2015).[7]

The plaintiff has not pleaded facts indicating that her purported emotional injury was a direct injury, induced by the breach itself, as opposed to a consequence of the breach. See Kennedy, 448 N.E.2d at 1335-36. The Kennedy court's example distinguishing between a direct and consequential injury is illustrative. Id. at 1336. The court reasoned that where a "defendant's breach resulted in gases escaping from the machine and ruining a family manuscript or portrait, plaintiff's recovery would be limited to the value of the physical item; recovery of the sentimental or emotional loss consequent upon its destruction would not be permitted." Id. In the Kennedy example, the emotional injury was a consequence of the harm done to the family heirloom, not a direct injury from the gas. Here, Defendant's alleged failure to provide reasonable care and safety resulted in an assault and battery, which is the direct injury. The resultant emotional distress was a consequence of the injury. Thus, Plaintiff's negligent infliction of emotional distress claim is DISMISSED WITHOUT PREJUDICE.

---

[7] Recently, the elements of a negligent infliction of emotional distress claim have been questioned. See Taggart, 14 N.Y.S.3d at 388 (holding that "notwithstanding case law to the contrary, extreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress."). The court need not wade into this state law dispute at this point because, as explained below, Plaintiff's claim fails for independent reasons.

13

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

Given the nature of the factual gaps in the Complaint, Plaintiff may be able to cure some or all of the issues identified in this Memorandum and Order. Accordingly, the court grants Plaintiff leave to file an amended complaint within fourteen (14) days of the entry of this Memorandum and Order. Fed. R. Civ. P. 15(a)(2). If Plaintiff opts not to amend, the court will enter judgment in favor of Marshalls and close the case.

SO ORDERED.

Dated: Brooklyn, New York
December 27, 2015

/s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

14